**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM FIFIELD,

                Plaintiff,

  v.                                      No. 03-CV-864

COMMISSIONER OF SOCIAL SECURITY,        (LEK/DRH)

                Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

RAYMOND J. KELLY, ESQ.
Attorney for Plaintiff
108 Bay Street
Manchester, New Hampshire 03104

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

# REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff William Fifield ("Fifield") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Fifield moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 18, 19.  For the reasons which follow, it is recommended that the

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Commissioner's decision be affirmed and Fifield's motion for a finding of disability be denied.

## I. Procedural History

On June 20, 2001, Fifield filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 113-15, 351-57.[2] That application was denied after the initial determination and following reconsideration. T. 81-84. Fifield requested a hearing before an administrative law judge (ALJ), T. 86-88, which was held before ALJ Thomas P. Zolezzi on March 12 and July 12, 2002. T. 21. In a decision dated September 26, 2002, the ALJ denied Fifield's claims. T. 18-26. On August 6, 2003, the Appeals Council denied Fifield's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 9-12. This action followed.

## II. Contentions

Fifield contends that the ALJ erred when he relied on the testimony of the vocational expert in determining that he had the residual functional capacity (RFC) to perform work that exists in substantial numbers in the national economy and failed properly to weigh the evidence pertaining to his credibility. The Commissioner contends that there was substantial evidence to support the determination that Fifield was not disabled.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 11.

### III. Facts

Fifield is currently forty-six years old, previously worked as a loader and truck driver, and has a ninth grade education. T. 38, 70, 80. Fifield alleges that he became disabled on June 19, 2000 due to myocardial infarction [3] and chronic obstructive pulmonary disease (COPD).[4] T. 21.

### IV. Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2002). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2002).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to

---

[3] The formation of an area of coagulation necrosis in the muscular tissue of the heart as a result of interruption of the blood supply to the area. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 837, 1091 (28th ed. 1994) [hereinafter "DORLAND'S"].

[4] "Any one of a group of diseases comprising emphysema, bronchial asthma, chronic bronchitis, bronchiectasis, and cystic fibrosis marked by chronic obstruction of the bronchial tubes." 2-CH-CZ SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE 218 (2004).

evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

The reviewing court must determine if the commissioner has applied the proper legal standards and if the decision is supported by substantial evidence. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209

F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

Fifield was treated at Adirondack Cardiology Associates from June 21, 2000 to January 29, 2003. T. 226-59, 344-46, 375-77.  On June 21, 2000, Fifield was diagnosed with an anterior wall myocardial infarction, underwent a cardiac catherization, and a stent was placed in the left anterior descending coronary artery. T. 193, 258.  In July 2000, an electrocardiogram (EKG) showed normal sinus rhythm with no evidence of ischemia,[5] there was no chest pain with exercise, no dyspnea,[6] a normal blood pressure response to exercise, and attenuated heart rate response to exercise due to beta blocker therapy. T. 236.  A chest x-ray showed no evidence of acute cardiopulmonary disease. T. 266.  On July 17, 2000,  Fifield was advised that he could return to work as a truck driver. T. 236. Fifield's medications included Coumadin, Accupril, Torpol, Zocor, and Aspirin. T. 234.

In October 2000, Fifield complained of chest pain; however, there were no

---

[5] "[D]eficiency of blood in a part, usually due to functional constriction or actual obstruction of a blood vessel." DORLAND'S 861.
[6] "[D]ifficult or labored breathing. DORLAND'S 518.

xanthomas,[7] no carotid bruits,[8] the chest was clear, there were no murmurs, gallops, or clicks, and there was no peripheral edema. T. 234. An echocardiogram revealed mildly depressed left ventricular systolic function with no valvular abnormalities. T. 231-32. On April 5, 2001, a chest X-ray showed no acute abnormality and an EKG showed normal sinus rhythm. T. 289-91. In July 2001, Fifield complained of increasing dyspnea on exertion but denied chest pain or palpitations. T. 230, 288, 317. On December 11, 2001, a cardiac catherization revealed no significant obstructive angiographic coronary disease. T. 332-40. In January 2003, an EKG showed sinus bradycardia, Fifield's heart was regular, there was no mucus, and Fifield appeared to be doing relatively well. T. 375.

Dr. William Pender treated Fifield from July 21, 2000 to February 18, 2002. T. 211-24, 328-31. Fifield complained of shortness of breath, wheezing, nausea, and weakness. T. 329. Fifield's chest and lungs were clear to ausculation and percussion, there was no adenopathy or bruits, his heart was regular, there was no murmur, click, or rub, and his extremities were unremarkable. T. 224, 327. The impression was arteriosclerotic cardiovascular disease (ASCVD),[9] dyspnea on exertion, and hyperlipidemia. T. 211. Pulmonary function tests revealed a slight reduction of the airways and the assessment was early obstructive lung disease with nearly normal studies. T. 211-15. A chest x-ray showed no evidence for pulmonary edema. T. 226, 328. Dr. Pender opined that the shortness of breath and wheezing were due to gastroesophageal reflux disease. T. 329.

---

[7] A "tumor composed of lipid-laden foam cells, which are histiocytes containing cytoplasmic lipid material." DORLAND'S 1848.

[8] A "sound or murmur heard in auscultation, especially an abnormal one." DORLAND'S 233.

[9] A disease characterized by thickening and loss of elasticity of the coronary arteries. DORLAND'S 130.

On July 18, 2001, Fifield was evaluated by Dr. George Wooton. T. 278-80. The impression was post-myocardial infarction and possible chronic obstructive pulmonary disease. T. 279. Dr. Wooton opined that Fifield could be involved in activities requiring sitting, standing, and walking, but that the climbing of stairs, lifting, and carrying would need to be restricted but that otherwise there were no limitations. T. 280. A pulmonary function test indicated a mild restriction and a chest x-ray showed no acute lung disease. T. 281-86.

A physical RFC assessment completed on September 18, 2001 found that Fifield could occasionally lift and carry fifty pounds and frequently lift and carry twenty pounds; could stand, walk, and sit six hours in an eight-hour work day; was unlimited in the amount that he could push and pull; and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. T. 308-14.

### B. Vocational Expert

Fifield contends that the ALJ erred in relying on the vocational expert's testimony.

Where, as here, a claimant demonstrates that he or she has an impairment that prevents a return to past relevant work, the burden shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. Curry, 209 F.3d at 122. he Commissioner must present "testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations." Rosa v. Callahn, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d 601, 606 (2d Cir. 1986)). "[W]ork exists in the national

7

economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a) (2005). However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy." 20 C.F.R. § 404.1566(b).  If the claimant can perform work that exists in the national economy, a finding of not disabled will be made.  Id.

Fifield contends that the hypothetical RFC posed to the vocational expert was not consistent with the sitting restriction that the ALJ found in his listing of findings.  Here, in finding number five, the ALJ found that Fifield had the RFC to perform light and sedentary work [10] and was able to sit for two hours in an eight hour day.  T. 26.  Both light and sedentary work require an ability to sit for six hours in an eight-hour day. 20 C.F.R. § 416.967(a) (b).  Performance of light work encompasses sedentary work as well. 20 C.F.R. § 404.1567.  In the text of the opinion, the ALJ found that Fifield's statement that he could not sit for six hours was not supported by any evidence in the record, that there

---

[10] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds " and generally involves standing and/or walking for a total of six hours in an eight hour day and sitting "intermittently for the remaining time." 20 C.F.R. § 416.967(b); S.S.R. 83-10.  Sedentary work requires a claimant be capable of

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a); Kamerling v. Massanari, 295 F.3d 206, 208 n.2 (2d Cir. 2002). "[S]edentary work 'generally involves up to *two hours of standing or walking* and *six hours of sitting* in an eight- hour work day.' "  Curry, 209 F.3d at 123 (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)) (emphasis in original)).

was no indication in the record that Fifield would have any difficulty with sitting or how it would affect his ability to breathe, and that Fifield's description of his activities were compatible with light work. T. 25.  Clearly, the ALJ found that Fifield could perform a full range of light work notwithstanding the separate finding listed at the end of the opinion which stated that Fifield was able to sit for two hours in an eight-hour work day.

  Fifield also contends that the ALJ erred in relying on the testimony of the vocational expert that Fifield could perform jobs that were identified as semi-skilled at a specific vocational level (SVP) of three because the ALJ found that Fifield could perform only simple, entry-level work.  Fifield contends that an SVP of three is not classified as simple, entry-level work.  The Dictionary of Occupational Titles (DOT) lists a specific vocational preparation (SVP) time for each described occupation.  Unskilled work corresponds to an SVP of 1-2, semi-skilled work corresponds to an SVP of 3-4, and skilled work corresponds to an SVP of 5-9 in the DOT.  Soc. Sec. R. 00-4p (2000); Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 54 (W.D.N.Y. 2002). There is no corresponding classification of semi-skilled or unskilled work as simple as entry-level.

  In the hypothetical posed by the ALJ, the ALJ assumed that Fifield had no skills or semi-skills with a ninth grade education and required a simple entry-level job with no decision-making, no planning, no supervision of others, and no report-writing. T. 66. The vocational expert testified that Fifield could function as a cashier, packager, car wash attendant, bench worker, or collator.  All of these jobs have an SVP of two or three and are either light or sedentary and fall within the hypothetical asked by the ALJ. The ALJ found that Fifield could perform the jobs cited by the vocational expert.  The jobs cited by the vocational expert meet the specific RFC as described by the ALJ in the hypothetical.

Finally, Fifield contends that the ALJ failed to certify that the testimony of a vocational expert did not conflict with the DOT. Soc. Sec. R. 00-4p provides that the ALJ "may not rely on evidence provided by a vocational expert . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." In addition, "[w]hen there is an apparent unresolved conflict between vocational . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational . . . evidence." Id.  However, "an ALJ may rely on an expert's opinion, notwithstanding a conflict with the Dictionary [of Occupational Titles], when the opinion is adequately supported by the evidence." Jasinski v. Barnhart, 341 F.3d 182, 183 (2d Cir. 2003). When a vocational expert's testimony conflicts with the DOT, the testimony may still constitute substantial evidence to support a finding that jobs are available. Sanchez v. Barnhart, 329 F. Supp. 2d 445, 453 (S.D.N.Y. 2004).

Here, the vocational expert testified that a cashier was classified with an SVP of three which he testified was unskilled. However, an SVP of three actually corresponds to semi-skilled work. The vocational expert's only misidentification was the classification of a cashier's SVP of three as unskilled when it was classified by the DOT as semi-skilled.[11] Here, the ALJ found that Fifield could perform the jobs listed by the vocational expert and in his hypothetical had the vocational expert assume that Fifield had no skills or semi-skills. T. 67. This was the only misstatement by the vocational expert, who properly identified a car wash attendant with an SVP of two as unskilled.  Therefore, the jobs cited by the vocational expert are consistent with Fifield's RFC.

---

[11] "Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling. " Soc. Sec. R. 00-04p (2000).

The vocational expert's opinion that Fifield could function as a cashier is supported by substantial evidence.

> Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568. Fifield's ninth grade education and difficulty reading and writing would have no impact on his ability to do semi-skilled work. There was no indication in the record that Fifield was learning disabled or otherwise had any mental impairment that affected his coordination, memory, alertness, or ability to learn.

Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.

### C. Pain and Credibility

Fifield contends that the ALJ failed properly to weigh the evidence pertaining to his credibility. The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings, provided that the underlying impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2005); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence. 20 C.F.R. §

11

404.1529 (2005); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so. Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation as well as the medical evidence of impairment are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999) (Kahn, J.).  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings. Donato v. Secretary of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve

12

> . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2005).

Fifield contends that the ALJ failed to make a specific finding on the issue of degree of credibility. However, the ALJ concluded that Fifield's symptoms were not of a degree of severity, intensity, frequency, or duration as to preclude jobs cited by the vocational expert and that Fifield's statements and testimony describing a wide array of activities and the clinical findings were inconsistent with his subjective complaints. T. 25.

While Fifield was diagnosed with post-myocardial infarction and possible chronic obstructive pulmonary disease, his chest and lungs were clear to ausculation and percussion, and his heart was regular, there was no adenopathy, bruits, murmur, click or rub, and extremities were unremarkable. T. 224, 279, 327. Pulmonary function tests showed mild obstructive lung disease and with nearly normal studies and no acute lung disease. T. 211, 281-86. Chest x-rays showed no evidence for pulmonary edema or acute cardiopulmonary disease and no acute abnormalities, EKGs showed normal sinus rhythm with bradycardia, with no evidence of ischemia, and an echocardiogram revealed mildly depressed left ventricular systolic function with no valvular abnormalities. T. 226, 236, 266, 281-91. A cardiac catherization revealed no significant obstructive angiographic coronary disease and the chest pressure was thought to be related to myocardial ischemia. T. 332-40. Dr. Pender opined that the shortness of breath and wheezing were due to gastroesophabeal reflux disease. T. 329.

13

Fifield's contention that the ALJ rejected his credibility by misstating the date that Fifield testified that he quit smoking is meritless. The ALJ based this date on the information contained in the report of Dr. Wootan and did not specifically note this as a factor in assessing credibility. Fifield also contends that the ALJ erred when he gave little weight to Fifield's allegations that he had difficulty sitting and that sitting affected his ability to breathe. The ALJ's findings in this regard are supported by substantial evidence, as there were no clinical findings to support Fifield's allegations. While Fifield complained of shortness of breath, there was no consistent clinical finding other than mild COPD. Pulmonary function tests and x-rays were largely normal and did not reveal any significant abnormalities. The ALJ acknowledged Fifield's complaints of headaches, but there was little evidence to support a finding that they limited him in performing light work.

The ALJ's finding is supported by substantial evidence. Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, and Fifield's motion for a finding of disability be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing

Small v. Sec'y of HHS., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: August 17, 2005
         Albany, New York

_/s/ David R. Homer_
United States Magistrate Judge